**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| KEITH SULEK, | : | |
| Petitioner, | : | Case No. 3:06cv00238 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| TIM BRUNSMAN, Warden, | : | |
| Lebanon Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.     INTRODUCTION

In August 2002 Petitioner Keith Sulek went for a drive in a car with his three children as his passengers.  He unfortunately got into an accident causing physical injuries to two of his children, including but not limited to fractured bones.

Following the accident and Sulek's resulting indictment on various criminal charges, he pled no contest to the charges in September 2003.  A judge in the Greene County, Ohio Court of Common Pleas accepted Sulek's no-contest plea and found him guilty of committing four counts of aggravated vehicular assault and three counts of endangering children.  (Doc. #5, Exhibits A-C).

Before sentencing, Sulek's his trial counsel filed a Motion to Withdraw Plea.  *Id.*, Exh. D.  During the hearing on the Motion on December 9, 2003, Sulek's counsel explained that prior to the plea hearing, counsel had calculated the maximum possible

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

sentencing Sulek might receive at 37½ years. *Id.* (12/9/03 Hearing Transcript at 6). Sulek's counsel further explained that at the plea hearing, the prosecutor stated that Sulek's maximum possible sentence would be 17 years, due to the merger of some counts. *Id.* Sulek's counse explained, "there was some confusion in that regard that I don't think I advised Mr. Sulek appropriately on that with that information so that he could make an informed decision." *Id.* at 5-6. Sulek counsel's also asserted Sulek's innocence and emphasized the no-contest nature of his plea. *Id.* at 6.

After further argument by the parties, the trial judge denied Sulek's Motion to Withdraw Plea in part because Sulek had been informed during his plea hearing that the maximum sentence he might receive would be 17 years. *Id.* at 10-12. The judge sentenced Sulek to serve a total of 13 years imprisonment. *Id.* at 12-36 and Exh. E.

After unsuccessfully appealing his convictions in the Ohio courts, Sulek brings the present case *pro se* seeking a Writ of Habeas Corpus under 28 U.S.C. §2254. The case is before the Court upon Sulek's Petition (Doc. #1), Respondent's Answer (Doc. #5), Sulek's Traverse (Doc. #6), and the record as a whole.

## II.    STATE APPELLATE PROCEEDINGS

### A.    <u>Sulek's Direct Appeal</u>

#### 1.

After his conviction and sentencing, Sulek obtained new counsel and filed a timely appeal in the Ohio Court of Appeals raising two assignments of error:

1.    The trial court erred by not permitting [him] to withdraw his plea of no contest.

2.    [He] was denied effective assistance of counsel in violation of the Fifth, Fourteenth and Sixth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. #5 at 8, Exh. F at 6).[2]  After further briefing by the prosecutor and Sulek's appellate counsel, *id*, Exhs. G, H, Sulek filed a *pro se* Motion to File a Supplemental Merits Brief seeking to raise four additional assignments of error:

1.    [He] was denied his constitutional protestation against multiple punishments for the same offense in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions....

2.    [He] was denied the effective assistance of trial counsel due to counsel's failure to object to the imposition of consecutive sentences for allied offenses of similar import....

3.    The trial court erred by sentencing [him] based on facts not admitted by [him] in his no contest plea....

4.    [He] was denied the effective assistance of counsel due to counsel's failure to object to a sentence that was unlawful under existing law....

(Doc. #5, Exh. I at 6).  The Ohio Court of Appeals overruled Sulek's *pro se* Motion, explaining "It is the court's policy not to permit pro se parties to file briefs when they are represented by appointed counsel."  *Id*., Exh. J.

**2.**

On August 19, 2005 the Ohio Court of Appeals issued its Opinion on the merits of Sulek's direct appeal.  It stated preliminarily, "The facts giving rise to this litigation are eloquently stated by the trial court in its explanation of its sentencing decision, and these facts do not appear to be in dispute."  *Id*., Exh. K at 17.  The Court of Appeals then quoted the trial judge's statements during Sulek's sentencing hearing as follows:

'The facts of this case, Mr. Sulek, are that you got behind the wheel of a car with cocaine in your system, with a .08 alcohol level, and under the circumstances in which you were not allowed to be driving.  You were under a suspension at that time.

---

[2]  Citations to page numbers of Exhibits refer to the page numbers indicated by the Court's case management electronic case filing (CMECF) system.

'In that condition and those circumstances you took your three children, placed them in the motor vehicle and went for a drive. You lost control of you vehicle, and as a result of that crash, two of your children were ejected from the vehicle, *** and ***, who received significant injuries.

'Your son was not ejected, but was visibly shaken and incoherent as a result of what had just happened. The injuries to your children included road rash, a broken hip, bilateral pubic fractures, a left sacroiliac fracture of the sacrum, and this to ***.

'To ***, she suffered a spleen laceration, surrounding hematoma, a bilateral pulmonary contusion, a forehead laceration, a left midshaft displaced femur fracture; multiple abrasions, bilateral pubic ramee fractures, and left sacroiliac joint separation.

'And as these children are laying out there with these injuries, the Officer notes that while there was gasoline being emitted from the vehicle and the children were laying there who had to be – one child had to be removed from the location by bystanders, not you. You started smoking a cigarette and had to be advised by the Officer not to do that.

***

'There was some indication that perhaps these children, while in critical conditions, you did not give the Police and medical authority an immediate indication that they could be removed and it took a Paramedic Chief to order that these children be removed from the scene without your consent.***'

(Doc. #5, Exh. K at 17-18)(Court of Appeals' asterisk/ellipsis). Following this review of the facts, the Ohio Court of Appeals overruled Sulek's two assignments of error and affirmed his convictions. *Id*., Exh. K.

Sulek did not file a timely appeal in the Ohio Supreme Court. *See* Doc. #5 at 4.

**B.    Sulek's Application to Reopn Appeal**

"Under Ohio Appellate Rule 26(B), '[a] defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim

of ineffective assistance of appellate counsel.'" *O'Hara v. Brigano*, 499 F.3d 492, 497 (6th Cir. 2007).

In November 2005 Sulek returned to the Ohio Court of Appeals by filing a *pro se* Application to Reopen Direct Appeal under Ohio R. App. P. 26(B). (Doc. #5, Exh. L). He claimed that he was provided with constitutionally ineffective assistance of trial and appellate counsel as follows:

1.  Appellant was denied ineffective assistance of counsel due to counsel's failure to object to a sentence that was unlawful under existing law.

2.  Appellant was denied the effective assistance of trial counsel because counsel failed to prepare a defense for trial, failed to inform Appellant of the nature of the charges prior to entering a plea of no contest, failed to raise any legitimate basis for withdrawing a plea of no contest prior to sentencing, and failed to offer any testimony from Sulek himself to establish why he wanted to withdraw his plea.

(Doc. #5, Exh. L at 2-8). In January 2006 the Ohio Court of Appeals rejected each assignment of error, writing, "In sum, we conclude that Sulek has failed to demonstrate that his appellate counsel was ineffective, an essential predicate for re-opening an appeal pursuant to App. R. 26(B)." (Doc. #5, Exh. M at 5).

Sulek next filed a *pro se* Memorandum in Support of Jurisdiction in the Ohio Supreme Court. On April 26, 2006, the Ohio Supreme Court dismissed Sulek's appeal "as not involving any substantial constitutional question." *Id*. at Exh. P.

## III.  THE PRESENT CASE

On August 2, 2006, Sulek filed his presently pending habeas Petition raising the following Grounds for Relief:

GROUND ONE:      Petitioner was denied effective assistance of counsel on appeal, violating the Sixth and Fourteenth Amendments.

Supporting Facts:      Appellate counsel failed to raise significant and obvious issues of constitutional magnitude, including failing to present a claim regarding the unlawful sentence under Blakely v. Washington, and

failed to properly argue the ineffective assistance of trial counsel, which prejudiced the outcome of the proceedings.

GROUND TWO:      Petitioner was denied the effective assistance of counsel during the sentencing proceedings, in violation of the Sixth and Fourteenth Amendments.

Supporting Facts:      Petitioner was sentenced to consecutive terms of incarceration that individually and collectively exceeded the statutory maximum sentence based upon judicial fact finding and counsel remained silent, failing to lodge a proper objection.

GROUND THREE: Petitioner was denied the effective assistance of counsel during pretrial and plea proceedings.

Supporting Facts:      Petitioner's counsel admittedly failed to properly advise the trial court as to the reasons for the withdrawal of the plea prior to sentencing, failed to properly advise petitioner as to the ramifications of going to trial as compared with taking a plea, failed to assert the Petitioner's legal innocence in the withdrawal hearing, and compromised the outcome of the proceedings.

(Doc. #1 at 6-9).


## IV.      PROCEDURAL MATTERS

### A.      Exhaustion

Respondent contends that Sulek has failed to exhaust his ineffective assistance of trial counsel claims – his second and third grounds for relief. Respondent reasons, in part, that Sulek arguably raised these claims in Second Assignment of Errors in the Ohio Court of Appeals on direct appeal. And, according to Respondent, Sulek might still be able to raise claims of his ineffective assistance of trial counsel in the Ohio Supreme Court by way of a Motion for Leave to File a Delayed Appeal.

Sulek contends that he did not arguably raise his claims of ineffective assistance of trial counsel on direct appeal in the Ohio Court of Appeals; instead, he presented his ineffective assistance of trial counsel claim on a different basis – different, that is, from

the way he presented this claim in his Application to Reopen and different from the grounds he now asserts in his Second and Third Grounds for Relief.  As a result, according to Sulek, he can no longer raise these specific claims in the Ohio Supreme Court in a Motion for Leave to File a Delayed Appeal.

Sulek further contends that he exhausted his ineffective assistance of trial counsel claims by raising them in his Application to Reopen Appeal proceedings in both the Ohio Court of Appeals and the Ohio Supreme Court.

"A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court.  The petitioner must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court." *Smith v. State of Ohio*, 463 F.3d 426, 430 (6th Cir. 2007); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted).  "The exhaustion 'requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims.'"  *Smith*, 463 F.3d at 430 (quoting in part *Lott v. Coyle*, 261 F.3d 594, 601 (6th Cir. 2001)).

The exhaustion requirement may be excused when a return to state court "'would be an exercise in futility.'"  *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005) (quoting *Lucas v. People of the State of Michigan*, 420 F.2d 259, 262 (6th Cir. 1970)("holding that 'such a judicial runaround is not mandated' by the exhaustion requirement.")).  Similarly, 28 U.S.C. §2254(b)(1)(B)(i) excuses the exhaustion requirement when "there is an absence of available State corrective process...."

In the present case, there exists a remote possibility that the Ohio Supreme Court would grant Sulek leave to pursue a delayed direct appeal.  This could occur if he files a motion for delayed appeal presenting "adequate reasons for the delay."  Ohio Supreme Court. R. Pract., Rule II, §2(A)(4)(a).  Nothing in the record of the present case reveals a situation or circumstance indicating that Sulek would has any reason, let alone an

adequate reason, for failing to file a timely direct appeal. It is therefore quite unlikely that the Ohio Supreme Court would grant Sulek's motion for delayed appeal. *See id.*

Even if Sulek's surmounted this first procedural hurdle, he would face a second one in the form of Rule III(B)(2) of the Ohio Supreme Court Rules of Practice. This Rule would require Sulek to file a Memorandum in Support of Jurisdiction and, in doing so, convince the Ohio Supreme Court that his case involved a "substantial constitutional question." Rule III(A), (B)(2). This broadly phrased, somewhat amorphous, and wholly discretionary threshold standard is infrequently met in Ohio, as Sulek experienced during his Rule 26(B) proceedings when the Ohio Supreme Court dismissed his appeal – without written analysis – "as not involving any substantial constitutional question." (Doc. #5, Exh. P).

Given the inherent difficulty in surmounting these two procedurals hurdles, there is at best for Sulek a mere remote possibility that the Ohio Supreme Court would reach the merits of the claims of ineffective assistance of trial counsel he now raises his Second and Third Ground for Relief. Inherent difficulty aside, the Ohio Supreme has implicitly rejected a variation of these two claims by rejecting Sulek's Memorandum in Support of Jurisdiction during his Ohio App. Rule 26(B) proceedings. In that Memorandum, two of Sulek's three Propositions of Law raised his ineffective assistance of trial counsel claims. (Doc. #5, Exh. N). The State of Ohio's Memorandum in Opposition argued against the merits of those claims. *Id.*, Exh. O. Through the parties' respective arguments, the Ohio Supreme Court was effectively presented with the substance of Sulek's ineffective assistance of trial counsel claims. *See* Doc. #5, Exh. Given that context, the Ohio Supreme Court's rejection of Sulek's claims reinforces the conclusion that he would at best have a remote chance of convincing the Ohio Supreme Court to review the merits of his claims of ineffective assistance of trial counsel.

Lastly, and perhaps most significantly, requiring Sulek to return to the Ohio Supreme Court would be futile since, as will be seen below, his claims of ineffective

assistance trial counsel lack merit.  *See Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001).

Accordingly, for all the above reasons, compelling Sulek to exhaust his Second and Third Ground for Relief by returning to the Ohio Supreme Court is unwarranted since it would be an exercise in futility.  *See Turner*, 401 F.3d at 724.

## B.  <u>Procedural Default</u>

"In general, a federal court may not consider an issue of federal law arising from a judgment of a 'state court if that judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the [state] court's decision.'  A federal court typically will not reach the merits of a claim when a state court has already rejected that claim for procedural reasons – i.e., the petitioner has 'procedurally defaulted' the claim in state court."  *Matthews v. Ishee*, 486 F.3d 883, 889-90 (6th Cir. 2007) (quoting in part *Harris v. Reed,* 489 U.S. 255, 260-61 (1989)).

Conducting the procedural-default inquiry addresses, the Court determines: "(1) if there is a state procedural rule that applies and petitioner failed to comply with that rule; (2) if the state court actually enforced the state procedural sanction; (3) if the state procedure ground is an 'independent and adequate' ground to refuse review; and (4) if there is no cause and prejudice to excuse the default."  *James v. Brigano*, 470 F.3d 636, 640 (6th Cir. 2006)(citations omitted).

Respondent contends that Sulek's Second and Third Grounds for Relief – ineffective assistance of trial counsel – might be barred by procedural default due to his failure to file a timely direct appeal in the Ohio Supreme Court.  Respondent is correct that this might constitute a procedural default under Ohio's doctrine of *res judicata*  – the "might" hinging on whether the above conclusion is correct, *see supra*, IV(A), namely that Sulek has at best a futile avenue of relief remaining by way of delayed direct appeal.  *E.g., Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Yet it is unnecessary to resolve this issue because more occurred in this case –

Sulek presented his claims of ineffective assistance of trial counsel in his Application to Reopen Appeal under Ohio R. App. P. 26(B) and the Ohio Court of Appeals reached the merits of the claims he raised. *See* Doc. #5, Exhs. L, M.

Respondent acknowledges that Sulek attempted to raise at least some of his ineffective of trial claims in support of his Rule 26(B) Motion. Yet, relying on *Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001), Respondent argues that Sulek's procedurally defaulted claims of ineffective assistance of trial counsel are not resurrected for a merits review by his inclusion of them in his Rule 26(B) Motion as grounds for his claim of ineffective assistance of appellate counsel. *Lott*, however, is not as definitive as Respondent suggests in light of later Court of Appeals' decisions.

In *James v. Brigano*, 470 F.3d 636 (6th Cir. 2006), the Court of Appeals concluded that a procedural default did not occur even though the petitioner omitted the claim from his direct appeal. The Court of Appeals based its conclusion on two combined reasons: first, the petitioner raised the claim in support of an ineffective assistance of appellate counsel in a Rule 26(B) Motion; and second, the Ohio Court of Appeals did not enforce an independent state procedure bar to the claim but instead reviewed the claim on the merits. *James*, 470 F.3d at 641. In doing so, the Court of Appeals recognized the need to precisely examine what the court of appeals did – whether it rested its decision on a procedural bar or whether it reached the merits of the potentially defaulted claim. *See id.*; *see also Patterson v. Haskins*, 316 F.3d 596, 605 (6th Cir. 2003); *Harris v. Reed*, 489 U.S. 255, 263 (1989) ("a federal claimant's procedural default precludes federal review..., only if the last state court rendering a judgment in the case rests its judgment on the procedural default.").

Because the Ohio Court of Appeals did not enforce the doctrine of res judicata as a bar to Sulek's ineffective assistance of trial counsel claims, and instead rejected those claims on the merits, the doctrine of res judicata does not constitute a procedural bar to federal habeas review of those claims.

In addition, even if Sulek's committed a procedural default with regard to his claims of ineffective assistance of trial counsel, his claim of ineffective assistance of appellate counsel may serve as "cause" for that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Yet, before his ineffective assistance of appellate counsel can constitute cause and prejudice for his procedural default, Sulek must also show that his claim of ineffective assistance of appellate counsel has merit. *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)(citing *Edwards*, 529 U.S. at 450-51).

As the following analysis reveals, Sulek's claims of ineffective assistance of appellate and trial counsel lack merit.

## V. MERITS

### A. The Antiterrorism and Effective Death Penalty Act (AEDPA)[3]

Under the AEDPA, a Writ of Habeas Corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

---

[3] Codified in large part in 28 U.S.C. §2254. *See* Pub.L. No. 104-132, 110 Stat. 1214.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).(quoting in part *Bell v. Cone*, 535 U.S. 685, 694 (2002)(citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"A decision is an 'unreasonable application' of clearly established Supreme Court law if a 'state court correctly identifies the governing legal principle from [Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir. 2008)(quoting in part *Williams*, 529 U.S. at 413). An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007) (citations omitted).

### B. Ineffective Assistance of Appellate and Trial Counsel

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides a criminal defendant with "the right to the effective assistance of counsel ." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14..., (1970). To establish a claim of ineffective assistance of trial counsel, a criminal defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007).

These standards apply in the context of representation provided during plea hearings with the second prong focusing on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in

12

order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would ... have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006).

*Strickland*'s two-part test also applies to claims of ineffective assistance of appellate counsel, *e.g., Smith v. State of Ohio Dep't. of Rehab. & Corrections*, 463 F.3d 426, 432-35 (6th Cir. 2006), because the "Sixth Amendment guarantees the right to effective assistance of counsel on a first direct appeal as of right." *Boykin v. Webb*, 541 F.3d 638, 647 (6th Cir. 2008) (citing in part *Evitts v. Lucey*, 469 U.S. 387 (1985)).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).   Beginning with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 687, a non-exhaustive list of performance-related questions is considered.  *Whiting v. Burt*, 395 F.3d 602, 616 n.8 (6th Cir. 2005).[4]

"'[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (citation omitted).  And "[c]ounsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v.*

---

[4]  The following questions apply to considering whether appellate counsel's failure to raise certain issues constituted constitutionally ineffective assistance:  1.  Were the issues 'significant and obvious'? 2.  Was there arguably contrary authority on the omitted issues?  3.  Were the omitted issues clearly stronger than those presented? (4) Were the omitted issues objected to at trial? (5) Were the trial court's rulings subject to deference on appeal? (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?  (7) What was appellate counsel level of experience and expertise?  (8) Did the petitioner and appellate counsel meet and go over possible issues?  (9) Is there evidence that counsel reviewed all the facts?  (10) Were the omitted issues dealt with in other assignments of error?  (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?  *Whiting*, 395 F.3d at 616 n.8.

*Mitchell,* 264 F.3d 663 (6th Cir. 2001)).

**C.**   <u>**Analysis**</u>

**1.**

In its decision denying Sulek's Rule 26(B) Motion to Reopen Appeal, the Ohio Court of Appeals cited *State of Ohio v. Bradley*, 42 Ohio St.3d 136 (1989) and recognized that *Bradley* applied the law set forth in *Strickland*. *See* Doc. #5, Exh. M at 2; *see also Bradley*, 42 Ohio St.3d at 141-43). The Ohio Court of Appeals also correctly described the law established in *Stickland* as follows: "A showing of ineffective assistance of trial counsel requires a showing that trial counsel's performance fell below an objective standard of reasonable representation...." (Doc. #5, Exh. M at 14). As a result, the Ohio Court of Appeals' decision denying Sulek's Motion to Reopen Appeal rested on the correct legal standards and was not contrary to the clearly established Supreme Court case law.

Similarly, in its decision on Sulek's direct appeal, the Ohio Court of Appeals cited *Bradley*, which applied *Strickland*. *See* Doc. #5, Exh. K at 13. And the Ohio Court of Appeals based its rejection of Sulek's claim that his trial counsel provided ineffective assistance upon legal criteria *Strickland* mandated. *See id.* Consequently, the Ohio Court of Appeals' decision on Sulek's direct appeal rested on the correct legal standards and was not contrary to clearly established United States Supreme Court case law.

The remaining AEDPA issues therefore concern whether the Ohio Court of Appeals unreasonably applied *Strickland* to Sulek's claims of ineffective assistance of trial and appellate counsel. *See Hill v. Mitchell*, 400 F.3d 308, 323-24 (6th Cir. 2005).

**2.**

Sulek contends that his trial counsel provided ineffective assistance during the sentencing proceeding by failing to lodge an objection to the consecutive terms of incarceration he received when his sentence exceeded the statutory maximum sentence

based on the trial judge's – not a jury's – findings of fact.

This claim essentially argues that Sulek's trial counsel failed to recognize the significance of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted, and proved beyond a reasonable doubt." *Id*. at 490. This claim also essentially argues that trial counsel failed to anticipate *Blakely v. Washington*, 542 U.S. 296 (2004), which held that a Sixth Amendment violation occurs "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow." *Id*. at 303-04.

The Ohio Court of Appeals rejected Sulek's contentions as follows:

Sulek was sentenced in December, 2003, following a no-contest plea. He contends that his trial counsel should have argued that the findings required for the imposition of maximum, consecutive sentences could only be made by a jury, citing *Blakely*....

We have held, for purposes of evaluating claims of waiver of rights under *Blakely*, that it did not create new law but merely applied the existing law under *Apprendi*.... Nevertheless, neither the criminal defense bar nor the trial courts seem to have anticipated the result in *Blakely* ... or its possible ramifications for Ohio's sentencing scheme. We are not aware of any counsel in this district who made an argument, before *Blakely* was decided, that *Apprendi* ... *required* jury findings for maximum or consecutive felony sentences.

A showing of ineffective assistance of trial counsel requires a showing that trial counsel performance fell below an objective standard of reasonable representation. *State v. Bradley* (1989), 42 Ohio St.3d 136, applying *Strickland v. Washington*.... Reasonable representation does not require counsel to imagine every conceivable novel application of existing constitutional precedent. If reasonable representation following *Apprendi* ... required taking the position that a jury finding is required for every maximum or consecutive felony sentence in Ohio, then, we would have determine that every criminal defense lawyer in this appellate district who represented a defendant at a sentencing hearing where a maximum or consecutive sentence was imposed during the interval between the *Apprendi* and *Blakely* decisions, rendered ineffective assistance of counsel. We are

not prepared to do so.

>Because we conclude that no showing can be made that Sulek's trial counsel was ineffective for having failed to object to the trial court's having made the requisite findings for maximum, consecutive sentences, it necessarily follows that appellate counsel was not ineffective for having failed to assign that as error.

(Doc. #5, Exh. M at 2-3). The Ohio Court of Appeals' evaluation of Sulek's trial counsel's performance in light of the uncertainty of *Apprendi*'s potential application to Ohio's felony sentencing scheme and the general failure of defense counsel and trial courts in Ohio to anticipate *Blakely*'s application to Ohio felony sentencing scheme is not unreasonable. *Cf. Nichols v. United States*, 563 F.3d 240 (6th Cir. 2009)(trial counsel not ineffective for failing to anticipate change in law and raise *Apprendi*-based challenge at sentencing or on direct appeal, or for failing to move Court of Appeals for reconsideration based on *Blakely*); *United States v. Burgess*, 142 Fed. Appx. 232 (6th Cir. 2005)(same).

In addition, the Ohio Court of Appeals did not apply *Strickland* in an objectively unreasonable manner by determining that appellate counsel's omission of a *Blakely* claim was not deficient performance. As the Ohio Court of Appeals correctly recognized that appellate counsel's omission of a meritless claim is not deficient performance and does not constitute constitutionally ineffective assistance. *See Willis v. Smith*, 351 F.3d at 745.

Accordingly, Sulek's Second Ground for Relief lacks merit.

### 3.

Sulek next contends that his trial counsel provided ineffective assistance by failing to properly advise the trial court of Sulek's reasons for wanting to withdraw his no-contest plea, by failing to advise Sulek of the ramifications of going to trial as compared to entering a plea, by failing to assert his innocence, and by "comprom[ising] the outcome of the proceedings." (Doc. #1 at 8).

In its decision on Sulek's direct appeal, the Ohio Court of Appeals determined the

following:

> Sulek contends that his trial counsel was ineffective for having failed to advise him, in advance of the plea hearing that his maximum possible sentence was only 17½ years, not 37½ years. As Sulek notes, a claim of ineffective assistance of counsel requires not merely that trial counsel's performance fell below an objective standard of reasonableness, but further that the accused was prejudiced as a result....

> Even if we were to assume that trial counsel was deficient for having failed to advise Sulek of the effect of mergers on his maximum exposure, we cannot find, on this record, that Sulek was prejudiced as a result. Although, at the hearing on the motion to withdraw the plea Sulek's counsel speculated that 'it's a possibility' that Sulek would not have pled no contest had he known that he faced at most 17½ years of incarceration, there is nothing in the record to support this speculation. The record indicates that by the time of the plea hearing, if not before, Sulek clearly understood that the maximum term of imprisonment he faced was 17½ years.

(Doc. #5, Exh. K at 13)(citation omitted). A review of the transcript of Sulek's hearing on the Motion to Withdraw his no-contest plea confirms the accuracy of the Ohio Court of Appeals' reading: trial counsel indeed stated it was a "possibility" that Sulek would not have entered a no-contest plea had he known he faced 17½ years as opposed to 37½. Since there was only the possibility Sulek would have changed his plea, it was not an unreasonable application of *Hill/Strickland* to find that no prejudice to Sulek resulted from counsel's miscalculation.

In addition, Sulek cannot show prejudice from trial counsel apparent miscalculation of his maximum sentence, because – as the trial judge recognized during Sulek's plea hearing – before Sulek entered his plea, the trial judge informed him that the maximum sentence he could receive was 17½ years, not 37½. Indeed, when asked by the trial judge if he knew what the maximum term of imprisonment he might receive, Sulek stated, "Yes, sir." (Doc. #5, transcript, 9/15/03 at 8). The trial judge next asked, "What is it?" And Sulek answered, "17 and a half years." *Id*. Because Sulek pled no contest with full knowledge of the correct maximum sentence he might receive, he cannot demonstrate

that the incorrect information he received from trial counsel prejudiced him.

Sulek's further contention that his trial counsel was ineffective by failing to assert Sulek's innocence is factually incorrect. The transcript of the hearing on Sulek's Motion to Withdraw Plea establishes that his trial counsel informed the trial judge that Sulek "asserts his innocence in this matter. He doesn't believe he committed a criminal offense; thus, he didn't admit his guilt. He pled no contest...." (Doc. #5, transcript 12/9/03 at 6). In this manner, trial counsel asserted Sulek's innocence in a manner that plainly informed the trial judge of Sulek's position, and in doing so, advocated on Sulek's behalf in a manner within the wide range of professional competence due his performance under *Strickland* and *Hill*.

As to Sulek's remaining arguments, for the reasons set forth above, *supra*, §V(C)(2), trial counsel's omission of a *Apprendi*/*Blakely* argument during his sentencing did not constitute constitutionally deficient performance. And Sulek has not presented sufficient information to show that counsel provided ineffective assistance by comprising the outcome of the proceedings in the trial court. *See* Doc. #1, 6

**4.**

Sulek next contends that his appellate counsel provided ineffective assistance (1) by failing to raise the significant and obvious issue that his sentence was unlawful under *Blakely v. Washington*, 542 U.S. 296 (2004), and (2) by failing "to properly argue the ineffective trial counsel issue, which prejudiced the outcome of the appellate counsel proceedings." (Doc. #1 at 5).

For the reasons set forth above, when resolving Sulek's *Blakely* claim, the Ohio Court of Appeals did not unreasonable apply the clearly established Supreme Court law set fort in *Strickland* and *Hill*. *Supra*, §V(C)(2). In addition, a review of the brief filed by Sulek's appellate counsel in the Ohio Court of Appeals does not reveal that he provided constitutionally deficient performance. Counsel selected and presented the two main issues apparent from a reading of the trial court transcripts, and at most, winnowed out

other, weaker claims. Such an appellate strategy, emphasizing Sulek's stronger claims, did constitute deficient performance. *See Smith v. Murray*, 477 U.S. 527, 536 (1986)(the "process of winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy."). Appellate counsel's brief, moreover, was well written, cited to pertinent authority, and cogently argued Sulek's Assignments of Error. (Doc. #5, Exh. F).

Accordingly, Sulek's First Ground for Relief lacks merit.

### D.   CERTIFICATE OF APPEALABILITY

Before Sulek may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

### IT IS THEREFORE RECOMMENDED THAT:

1.     Keith Sulek's Petition for Writ of Habeas Corpus (Doc. #1) be denied and
       dismissed;

2.      A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.     The case be terminated on the docket of this Court.

June 4, 2009

                                        _____s/ Sharon L. Ovington_____
                                            Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).